**June SAFFLE, Plaintiff–Appellee,**

v.

**SIERRA PACIFIC POWER COMPANY BARGAINING UNIT LONG TERM DISABILITY INCOME PLAN, Defendant–Appellant.**

No. 95–15688.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 13, 1996.

Decided June 5, 1996.

As Amended June 28, 1996.

Suellen Fulstone, Woodburn, Wedge, Blakey & Jeppson, Reno, Nevada, for defendant-appellant.

Mark A. Kilburn, Langton & Kilburn, Reno, Nevada, for plaintiff-appellee.

Before: ALARCON, BEEZER and RYMER, Circuit Judges.

RYMER, Circuit Judge:

This appeal requires us to decide what should happen when district courts (or we) conclude that an ERISA plan administrator with discretionary authority to interpret and apply a plan has misconstrued the document and applied an incorrect standard to its benefits determination.

June Saffle applied for occupational disability benefits under the Sierra Pacific Power Company Bargaining Unit Long Term Disability Plan, an employee benefit plan governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq., on the basis of being totally disabled from performing each and every duty of her regular occupation. The administrator, with discretion to interpret and apply the Plan, construed its definition of "total disability"—"completely unable to perform each and every duty of [the participant's] regular occupation"—as "unable to perform a substantial portion of her regular job with accommodations that could have been made." It determined that Saffle was not entitled to benefits, but the district court found that this decision was arbitrary and that Saffle was totally disabled. We agree that the administrator abused its discretion by adding a requirement of coverage that conflicts with the plain language of the Plan, but we hold that when, as here, the administrator construes a plan provision erroneously, the court should not itself decide whether benefits should be awarded but rather should remand to the administrator for it to make that decision under the plan, properly construed.

We therefore reverse and remand with instructions to remand to Sierra Pacific's Pension and Benefit Committee for it to determine whether Saffle is entitled to the benefits for which she applied under the Plan interpreted consistently with this opinion.

I

June Saffle was employed by Sierra Pacific Power Company (Sierra Pacific) and was a participant in the Sierra Pacific Power Company Bargaining Unit Long Term Disability Income Plan, which is administered by the Sierra Pacific Power Company Pension and Benefit Committee (Benefit Committee or Committee). Saffle worked as a Customer Services Clerk in the Credit Department, a clerical job which included using computers, the telephone system, and various office machines, as well as interacting with customers.

The Sierra Pacific Plan has a two-tiered disability benefits structure, one for occupational disability and one for general disability. Paragraph 3.2 provides:

[A] Participant shall be considered "Totally Disabled", or to have a "Total Disability", for purposes of the Plan if during the qualifying disability period [180 days] and the first twenty-four (24) months of monthly benefits he is completely unable to perform each and every duty of his regular occupation. Thereafter a Participant shall be considered "Totally Disabled", or to have a "Total Disability" for purposes of the Plan if he is unable to engage, for compensation or profit, in any business or occupation for which he is reasonably fitted by education, training or experience.

In early 1983, a neuroma in Saffle's right foot was surgically removed. Pain continued and there were other complications; eventually, on April 29, 1985, Saffle stopped working. About this time she began to complain of neck and arm pain, apparently exacerbated by an automobile accident in August 1985. On November 5, 1985, Saffle applied for long term disability benefits under the Plan.

Saffle's application included a form from her internist and podiatrist that indicated that she is "totally disabled" from her current job, though not from "any other work."

Later she submitted opinions from a neurosurgeon and an orthopedic surgeon that likewise indicated that she is "totally disabled." At the direction of Tom Robertson, Vice President of the Human Resources Department of Sierra Pacific, Saffle agreed to an independent medical examination by Dr. Steven Atcheson. Robertson advised Atcheson of the Plan's definition of "total disability" during the first 180 days of disability and the first 24 months of disability; described Saffle's "regular job" as that of a Customer Services Clerk which is "mostly sedentary"; said that she was seated at least 80% of the time; and indicated that "[w]e also had/have work available for which she is qualified that would have enabled her to work with her feet elevated. At that task, she would have been seated except for breaks and any other movement of a personal nature." Atcheson was asked for his opinion regarding whether Saffle was "totally disabled, i.e., unable to perform *every* duty of her regular job?" Atcheson responded that Saffle "has not been totally disabled at any time since November 1985. This is assuming that she can remain seated with her right leg elevated and would not have to do any walking except for brief periods of time."

Equifax Services, the Plan's claims processing agency, determined that Saffle was not totally disabled since she is seated at least 80% of the time in her regular job as Customer Services Clerk, and "a position is available to enable her to work with her feet elevated." Saffle was told to return to work consistent with the limitations noted in Dr. Atcheson's report.

Saffle appealed Equifax's determination to the Benefit Committee, which directed Equifax to supply Saffle's physicians with the same information Robertson furnished to Atcheson. All but one, who continued to believe she was "totally disabled," responded that Saffle might be able to perform some portion of her job with modifications.

The Benefit Committee interpreted ¶ 3.2 to mean "the inability to perform substantial portions of the employee's regular job," and determined that Saffle was not totally disabled because "the weight of the medical opinion is that you could perform a substan-

tial portion of your regular job with the accommodations that could have been made."

Saffle then filed suit for benefits. After reviewing the administrative record, the district court concluded that the Committee's interpretation of the Plan's definition of "total disability" to include accommodations that could be made in Saffle's current job, and of the clause "completely unable to perform each and every duty of his regular occupation" to mean "the inability to perform substantial portions of the employee's regular job" were contrary to the plain language of the Plan. The court further found that the Benefit Committee's decision that Saffle was not totally disabled was not supported by substantial evidence, and that the weight of the evidence demonstrates that she was totally disabled. It therefore reversed the Benefit Committee's decision and remanded "for a determination of benefits due plaintiff under the Plan, from October 29, 1985, to the present."

Sierra Pacific timely appealed.

## II

■ Where, as here, an ERISA plan vests the administrator with discretionary authority to determine benefit eligibility, "a district court may review the administrator's determination only for an abuse of discretion." *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 552 (9th Cir.) (citation omitted), *cert. denied,* —— U.S. ——, 116 S.Ct. 276, 133 L.Ed.2d 197 (1995). The court of appeals in turn "reviews the district court's application of this standard and the conclusion that the [plan] administrator abused its discretion de novo." *Id.*

## III

Sierra Pacific argues that the Benefit Committee acted within its discretion in not interpreting the language of the Plan literally. It emphasizes that the Committee is charged with administration of the Plan, and that it made a reasonable and common sense decision that Saffle was not totally disabled on the grounds that four out of five doctors who examined her were of the opinion that she could do a "substantial portion" of her job duties with some accommodations.

■ An ERISA plan administrator abuses its discretion if it construes provisions of the plan in a way that "conflicts with the plain language of the plan." *Taft v. Equitable Life Assur. Soc.,* 9 F.3d 1469, 1472 (9th Cir.1993) (citations omitted). "Our inquiry is not into whose interpretation of the plan documents [i.e., the administrator's or the district court's] is most persuasive, but whether the plan administrator's interpretation is unreasonable." *Winters,* 49 F.3d at 553 (quoting *Barnett v. Kaiser Found. Health Plan, Inc.,* 32 F.3d 413, 416 (9th Cir.1994)).

### A

■ Sierra Pacific first argues that it would have been impossible for Saffle to satisfy the literal language of the Plan's definition of total disability (requiring that she be unable to perform "each and every" duty) because she had a clerical job, and her own doctors indicated that she was only moderately impaired and was capable of performing clerical, sedentary activity. It suggests that an inability to perform "each and every" duty means "all" the duties of the job, but that it was reasonable for the Committee to determine that such a definition, as literally applied, was too onerous and that Saffle should only have to show that she was unable to perform "substantial portions" of her duties. Saffle counters that "each and every" unambiguously means "each and every."

Reading "each and every" literally could mean either that a claimant is not totally disabled if she can perform any single duty of her job, no matter how trivial—or that a claimant is totally disabled if she cannot perform any single duty, no matter how trivial. There is little question that the phrase should not be given the former construction, as "total disability" would only exist if the person were essentially non-conscious. *See, e.g., Helms v. Monsanto Co., Inc.,* 728 F.2d 1416 (11th Cir.1984) (holding that arbitrator's literal interpretation of "total disability" as absolute helplessness was unreasonable because it would render the entire plan meaningless and would contradict policies underly-

ing ERISA; rather insured can recover if he is unable to perform all the substantial and material acts necessary to the prosecution of some gainful business or occupation); *Torix v. Ball Corp.*, 862 F.2d 1428 (10th Cir.1988) (same). On the other hand, Saffle's preferred construction would effectively convert benefits for total disability into benefits for partial disability. Given two possible literal meanings that are not wholly sensible, it cannot be unreasonable for the Committee to interpret the Plan so as neither to qualify, nor to disqualify, virtually everyone.

Having said that, it is not entirely clear what the Committee meant by its "substantial portion" standard. We do not accept as reasonable a "substantial portion" standard that connotes an inability to do a substantial number of the tasks in one's job description. This would arbitrarily substitute quantity for quality. However, we cannot say that the Committee lacks discretion to construe "each and every duty of [the participant's] regular occupation" to mean all of the substantial and material duties of her regular occupation. To the extent that this is what the Committee meant, its construction is consistent with the plain language of the Plan because it assumes that the participant is "completely unable to perform each and every duty" that matters.

### B

■ Sierra Pacific next argues that there is no language in the Plan that precludes the Committee from considering what accommodations could be made in the job to allow Saffle to continue working. It points out that the language calls not just for being "unable" to perform each and every duty, but being "*completely* unable" to do so. As this must mean something, Sierra Pacific submits, there is no reason why the Committee could not have interpreted "completely" to mean "even with reasonable accommodations." We disagree.

Paragraph 3.2 does not talk in terms of accommodation at all. Total disability for purposes of occupational benefits depends on whether the participant can perform the duties of her "regular occupation." As manifest in Robertson's instructions to the experts, the Committee construed "regular occupation" as "work available for which she is qualified that would have enabled her to work with her feet elevated" and to remain sedentary virtually always. This construction is inconsistent with the plain language of the Plan, and is inconsistent with the Plan's two-tiered disability structure because it collapses the threshold for occupational disability into the standard for general, or permanent disability. Total (occupational) disability has to do with the inability to perform a regular occupation for two years and 180 days; total (general) disability by contrast has to do with the inability thereafter to engage in any occupation for which the participant is reasonably fitted. To premise total occupational disability, as Robertson did, on having "work available for which she is qualified" that would have accommodated Saffle's limitations is thus inconsistent with the Plan.

Sierra Pacific argues that the job description used by the Committee was the same job description in the collective bargaining agreement, but in light of the spin that the Committee put on it, the "job description" is immaterial. It gave a wrong standard to the experts, their opinions of non-total disability were based on it, and the Committee denied benefits in light of it. Sierra Pacific also argues with some force that the company may have conflicting obligations to make reasonable accommodations under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq., but Saffle never asserted an ADA claim. We need not, therefore, go further here than to hold that interpreting the Plan's definition of "total disability" to include modifications or accommodations to "work available for which she is qualified" was contrary to its plain language.

■ Nor can we see how the phrase "*completely* unable" to perform her regular occupation can reasonably bear the weight that Sierra Pacific suggests. Paragraph 3.2 does not say "completely unable to perform the duties, *with the accommodations that could have been made,* to *work available for which she is qualified.*" To construe the Plan this way, as the Committee did, effectively imposes a new requirement for

coverage. However, an administrator lacks discretion to rewrite the Plan. *See, e.g., Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Alabama,* 41 F.3d 1476, 1484 (11th Cir.) (holding that a "claims administrator's decision is arbitrary and capricious where new requirements for coverage are added to those enumerated in the plan"), *cert. denied,* —— U.S. ——, 115 S.Ct. 2002, 131 L.Ed.2d 1003 (1995); *cf. Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480, 482 (9th Cir.1990) (administrator acted within its discretion because no new limitation was incorporated into the plan).

Sierra Pacific contends that we should be guided by *Eley v. Boeing Co.,* 945 F.2d 276 (9th Cir.1991), where we held that the interpretation given to "diagnostic test" by Blue Shield and approved by Boeing did not clearly conflict with the plain language of the plan. In *Eley,* the Plan's pre-existing condition exclusion included any illness for which a person had received a "diagnostic test." The Plan administrator construed "diagnostic test" to include a Pap test which, according to the claimant, was regarded as a "screening test" rather than a "diagnostic test." We concluded that there was no real conflict because the record showed that some experts considered a Pap test to be a "diagnostic test." Here, however, we cannot say that "regular occupation" constitutes "work available for which she is qualified" or the modified job on which the medical experts based their opinion that Saffle was not totally disabled.

We therefore conclude that the Benefit Committee could reasonably interpret the Plan as providing for payment of total occupational disability benefits when the participant is unable to perform all of the substantial and material duties of her regular occupation, but that the Committee arbitrarily construed the Plan to include performing a substantial portion of "work available for which she is qualified" with accommodations that could have been made.

## IV

■ Sierra Pacific further argues that the district court erred by ordering benefit payments beyond the initial 24–month disability period because Saffle never applied for general disability payments and her eligibility for the second-tier benefits has never been considered by the Benefit Committee. We agree that there is nothing in the administrative record about general disability. Of course it is the case, as Saffle contends, that she could not have applied for general disability since she first must have been awarded occupational disability benefits; but that affords no basis upon which to uphold an order to pay benefits from the date of onset to the present. Therefore, to the extent the district court ordered payments beyond the initial 24–month disability period, it was error to do so.

## V

Finally, Sierra Pacific asks us to reverse the determination of benefits ordered by the district court, and to remand with the direction that judgment be entered in favor of the Plan. For much the same reason that we shall reverse the district court's order to pay benefits, we decline to order judgment for Sierra Pacific.

The Plan itself reposes discretion in the Benefit Committee to determine "any debatable question arising in connection with the ... application ... of the Plan or any provision of the Plan." Here, the Committee abused its discretion by erroneously factoring "accommodation" into the criteria for total disability for purposes of occupational disability benefits. Unlike other instances where an ERISA plan administrator abuses its discretion (for example, rendering a decision without explanation, or relying on clearly erroneous findings of fact, *Taft,* 9 F.3d at 1472), the Sierra Pacific Benefit Committee has not yet had the opportunity of applying the Plan, properly construed, to Saffle's application for benefits. It should be up to the administrator, not the courts, to make that call in the first instance.

■ We have previously indicated that remands to the factfinder are appropriate in similar circumstances. In *Patterson v. Hughes Aircraft Co.,* 11 F.3d 948 (9th Cir. 1993), after holding that the Plan was ambig-

uous and incorrectly construed, we instructed the district court to remand to the administrator for a factual determination consistent with our opinion on plan interpretation. And in *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938 (9th Cir.1995), where the district court's review was de novo because, unlike this Plan, the benefit plan did not confer discretion on the administrator, we held that the terms of the plan construed in accordance with *Patterson* required reevaluation of the evidence and so we remanded to the district court for a factual determination under a proper construction of the terms of the plan. We now make it explicit, that remand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination. As then-District Judge Tashima explained in *Henry v. The Home Ins. Co.*, 907 F.Supp. 1392 (C.D.Cal.1995):

> It is not the court's function *ab initio* to apply the correct standard to [the participant's] claim. That function, under the Plan, is reserved to the Plan administrator. Accordingly, this matter must be remanded to the Plan administrator for a redetermination of [the participant's] claim, in a manner consistent with this opinion.

*Id.* at 1398–99.

### VI

Saffle asks for an award of attorney's fees on appeal, which we decline to consider on the ground that it is premature.

### VII

Because the Benefit Committee misconstrued the Plan language and applied the wrong standard to determine "total disability" for purposes of occupational disability benefits, we reverse and remand for the district court to remand to the Committee to act within a reasonable period of time on Saffle's application for long-term disability benefits

under a standard for "total disability" that is consistent with this opinion.

**REVERSED AND REMANDED.**