Salah MHADBHI, Plaintiff,

v.

JEFFERSON PILOT FINANCIAL, Jefferson Pilot Insurance Company, Guarantee Life Insurance Company, One, Both or all Nebraska Corporations; and DOES 1–15, Defendants.

No. C 02–03259 WHA.

United States District Court, N.D. California.

March 28, 2003.

---

Robert R. Pohls, Pohls & Humbert, Walnut Creek, CA, for defendants.

Christine A. Chorney, San Francisco, CA, Martin Titcomb, San Francisco, CA, for plaintiff.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING MATTER TO PLAN ADMINISTRATOR

ALSUP, District Judge.

### INTRODUCTION

Plaintiff filed suit under 29 U.S.C. 1132(a)(1)(B), the civil enforcement provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), to recover benefits allegedly due.[1] This order **DENIES** the motion for summary judgment of defendant Jefferson Pilot Financial Insurance Company ("Jefferson Pilot") and **REMANDS** the matter to the plan admin-

istrator for a redetermination of plaintiff's eligibility for benefits.

### STATEMENT

Plaintiff worked as an assistant sales manager at Serramonte Auto Plaza, an automobile dealership. Serramonte provided its employees, including plaintiff, with disability insurance. A group insurance policy issued by Guarantee Life Insurance Company to Serramonte Auto Plaza set forth the terms of coverage (Maley Exh. 3).

Plaintiff suffers from diabetic neuropathy and alleges that this condition has rendered him unable to perform the main duties of his job. In February 2001, plaintiff submitted a short-term disability claim form to Guarantee Life Insurance (Maley Exh. 1). Included with plaintiff's submission was an "Attending Physician Statement," a Guarantee Life Insurance form signed on by Dr. Aruna Chinnakotla, plaintiff's physician (*ibid.*). Dr. Chinnakotla indicated on the form that plaintiff suffered from diabetes with neuro/renal manifestations and was totally disabled from his present occupation from February 5 through May 4, 2001 (*ibid.*). The insurer's definition of total disability was printed on this form (*ibid.*).

Jefferson Pilot, which administered the insurance plan, concluded that there was not enough medical information to support plaintiff's claim of disability (Maley Exh. 4). Jefferson Pilot informed plaintiff of this assessment and requested relevant medical records from Dr. Chinnakotla (Maley Exh. 5).

After reviewing the material submitted by Dr. Chinnakotla, Jefferson Pilot denied

---

1. As explained by this Court's order dated October 3, 2002, two of the named defendants, Jefferson Pilot Financial and Jefferson Pilot Insurance, are not legal entities. The third-named defendant, Guarantee Life Insurance Company, merged into Jefferson Pilot Financial Insurance Company on August 1, 2000. Because plaintiff's claims are actually directed toward Jefferson Pilot Financial Insurance Company, the action is proceeding against Jefferson Pilot Financial Insurance Company.

plaintiff's request for disability benefits (Maley Exh. 7). In a letter dated April 4, 2001, Jefferson Pilot informed plaintiff of its decision (*ibid.*). The letter stated in part (*ibid.*):

Benefits are being denied based on the following policy provision:

"Total Disability" means the "Insured Person's inability, due to Sickness or Injury, to perform each of the material duties of his or her regular occupation". A person engaging in employment for wage or profit is not Totally Disabled.[2]

The letter further explained that "there is not sufficient medical information to support a severity of impairment, which would render you, totally disabled from your occupation" (*ibid.*). The letter noted that Dr. Chinnakotla characterized plaintiff's condition as "under control" and that plaintiff's symptoms of "burning, tingling and sometimes electrical shock sensation in the feet, especially at nighttime" were to be treated by an increased dosage of medication (*ibid.*). "Taking a medication alone," the letter stated, "does not substantiate Total Disability as defined above" (*ibid.*).

On May 5, 2001, plaintiff wrote to Jefferson Pilot requesting a reconsideration of the decision to deny him benefits (Maley Exh. 8). He explained that his job in car sales required him to stand on his feet for long periods of time and that his job and diabetes were causing pain in his feet (*ibid.*). He further stated that he was "unable to perform [his] job" because he was "unable to stand for longer than half and [sic] hour" (*ibid.*). Plaintiff enclosed a

letter from a neurologist, Dr. Chi–Chen Mao, confirming that plaintiff had difficulty performing work duties because his diabetic neuropathy caused him to experience pain while on his feet (*ibid.*). Also enclosed was a health-care provider form noting that plaintiff's "peripheral neuropathy . . . is aggravated by the weight bearing demands of his job" and "[h]is condition would improve with a new job with less weight bearing" (*ibid.*). Jefferson Pilot wrote to plaintiff on June 7, 2001, explaining that it was unable to overturn its decision because plaintiff's submissions contained no new medical evidence of total disability (Maley Decl. ¶ 11).

In November 2001, Jefferson Pilot received a letter from the California Department of Insurance indicating that plaintiff had requested assistance and asking Jefferson Pilot to reevaluate the matter (Maley Exh. 9). Jefferson Pilot requested and received additional medical information from Dr. Chinnakotla and Dr. Mao. It then arranged for a third physician, licensed in California and selected by a third-party vendor, to review plaintiff's medical records. The third physician, Dr. Fred Nowroozi, requested a job description for plaintiff's regular occupation, which plaintiff's employer subsequently provided. The job description indicated that plaintiff's duties as a car salesperson required him to sit for three hours, stand for two hours, and walk for three hours each workday, all with rest (Maley Exh. 20). Furthermore, plaintiff's job occasionally required him to bend, to squat, and to lift and carry loads of up to ten pounds (*ibid.*). "Driving automotive equipment" was also included among the activities the job involved (*ibid.*).

---

**2.** The policy language is almost identical (Maley Exh. 3):

"Total Disability" means the Insured Person's inability, due to Sickness or Injury, to perform each of the main duties of his or her regular occupation. A person engaging in any employment for wage or profit is not Totally Disabled. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

Dr. Nowroozi recommended that plaintiff undergo additional testing to evaluate his ability to return to work (Maley Exh. 18). Another physician, Dr. David Discher, subsequently reviewed plaintiff's medical records and examined him. Dr. Discher's evaluation, dated July 20, 2002, included the following conclusions (Maley Exh. 22):

**Specific Limitations and Restrictions**
Sitting limited to 30 minutes at a time. Standing limited to 30 minutes at a time. Alternating between both over an 8 hour work day is recommended. Walking distance should be limited to 100 feet without uneven terrain or stair climbing. Walking can be repeated over the workday with the requirement of a sitting rest of at least 30 minutes prior to a walk.

\*    \*    \*    \*    \*    \*

**Physical Capacity Findings**
Is generally able to use his feet for standing and walking alternating with appropriate sitting intervals. Carrying light loads, lifting repetitively light loads, and assuming mild bended or squatting positions are all functionally safe within some limits for repetitions. I do not recommend that this person operate any vehicle.

**Employer's Physical Requirements for Sales Person**
With respect to [the requirements] listed by his employer, I have interpreted that none of my recommended limitations or restrictions are impacting on job requirements, assuming that sitting and standing/walking alternation can be worked out in the details. These statements are limited to my evaluation of his

feet. The statements bear on current abilities and functional capacities, not future limitations.

Jefferson Pilot concluded from Dr. Discher's report that plaintiff did not suffer from a sickness or injury that rendered him unable to perform the main duties of his regular occupation (Maley Exh. 24–25). Jefferson Pilot forwarded Dr. Discher's report to plaintiff's treating physician, Dr. Chinnakotla, for comment. As requested, Dr. Chinnakotla confirmed in writing that she agreed with the Dr. Discher's findings (Maley Exh. 24).

Relying on the assessments by Dr. Discher and Dr. Chinnakotla, Jefferson Pilot concluded that plaintiff was not totally disabled within the meaning of the policy, and as a result, was not entitled to benefits (Maley Exh. 25).

Plaintiff commenced the instant action in state court in May 2002, while all this was underway. The case was subsequently removed to federal court. Defendant now moves for summary judgment, contending that it did not abuse its discretion by denying plaintiff's claim.

## ANALYSIS

**1. STANDARD OF REVIEW.**

■ When an ERISA plan vests the plan administrator with discretionary authority to determine eligibility for benefits or to construe the plan's terms, a district court normally reviews the administrator's determinations for abuse of discretion. *Alford v. DCH Found. Group Long–Term Disability Plan*, 311 F.3d 955, 957 (9th Cir.2002). Here, the plan explicitly gives the administrator such discretionary authority.[3]

---

**3.** The policy provided in relevant part (Maley Exh. 3) (emphasis added):

COMPANY'S DISCRETIONARY AUTHORITY. Except for those functions which this Policy specifically reserves to the Group

Policyholder or Employer, **the Company has the authority to manage this Policy, to administer claims, to interpret Policy provisions, and to resolve questions arising under this Policy. The Company's authori-**

■ That does not, however end the inquiry regarding the appropriate standard of review. In spite of a plan's grant of discretionary authority to the plan administrator, a conflict of interest may actuate a less deferential standard of review. As the Ninth Circuit recently explained:

> The showing of a conflict does not *automatically* eliminate the usual deference accorded to the plan administrator; rather, the plaintiff must show that the conflict may have influenced the decision. To make such a showing, the affected beneficiary must come forward with material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary. If the plaintiff makes this required showing, the plan then bears the burden of rebutting the presumption by producing evidence to show that the conflict did not affect its decision to deny benefits. If the plan fails to do so, the court should review its denial of benefits de novo.

*Ibid.* (internal quotations and citations omitted).

■ In this case, the fact that the insurer administers the benefits plan for plaintiff's employer creates an apparent conflict. The insurer in this situation has an incentive to deny coverage. Plaintiff argues that there is material, probative evidence that the administrator's decision was influenced by this conflict. Specifically, plaintiff points to the fact that the adminis-

trator rejected the findings of Drs. Chinnakotla and Mao, both of whom treated plaintiff and submitted that he was disabled from his job, in favor of those of Dr. Discher, the examining physician.

Plaintiff's argument is premised on *Regula v. Delta Family–Care Disability Survivorship Plan*, 266 F.3d 1130 (9th Cir. 2001). In *Regula*, the Ninth Circuit "add[ed] deviation from the treating physician rule to the short list of factors by which a court may determine that an apparent conflict of interest has ripened into an actual, serious conflict, thereby permitting the court to engage in de novo review." *Id.* at 1147; *see also Nord v. Black & Decker Disability Plan*, 296 F.3d 823, 829 (9th Cir.2002) (identifying other factors as well). The plan administrator in *Regula* had rejected the diagnoses of the appellant's treating physicians in favor of contradictory diagnoses of examining physicians to whom the appellant was referred by the plan. 266 F.3d at 1147. The district court was instructed to consider this and other evidence on remand to determine whether there was indeed a conflict of interest that would render abuse of discretion an inappropriate standard of review. *Ibid.*

Upon consideration of the treating-physician rule in this case, as well as the parties' submissions on point, this order concludes that abuse of discretion remains the proper standard of review. The Ninth Circuit stated in *Regula:*

ty includes (but is not limited to) the right to:
(1) establish and enforce procedures for administering this Policy and claims under it;
(2) determine Employees' eligibility for insurance and entitlement to benefits;
(3) determine what information the Company reasonably requires to make such decisions; and

(4) resolve all matters when a claim review is requested.
Any decision the Company makes, in the exercise of its authority, shall be conclusive and binding; subject to the Insured Person's right to request a state insurance department review or to bring legal action.

When a nontreating physician's opinion contradicts that of the treating physician—**but is not based on independent clinical findings**, or rests on clinical findings also considered by the treating physician—the opinion of the treating physician may be rejected only if the [administrator] gives specific, legitimate reasons for doing so that are based on substantial evidence in the record.

266 F.3d at 1140 (emphasis added) (internal quotations omitted). Here, the examining physician, Dr. Discher, examined plaintiff and performed a functional capacity analysis on him. Because Dr. Discher's opinion was based on his independent clinical findings, the treating-physician rule has no application here. This order further notes that Dr. Discher's report was submitted to plaintiff's treating physician, Dr. Chinnakotla, who indicated that she agreed with Dr. Discher's findings.[4] Jefferson Pilot's reliance on Dr. Discher's findings, therefore, does not create a rebuttable presumption that an actual conflict of interest influenced the decision. Because plaintiff has failed to carry his burden of showing that an actual conflict may have influenced the administrator's decision, abuse of discretion is the applicable standard of review.

### 2. REVIEW FOR ABUSE OF DISCRETION.

■ The question of whether the administrator abused its discretion in denying disability benefits is a question of law. In such a case, a motion for summary judgment functions as a "conduit to bring the legal question before the district court." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir.1999). Accordingly, "the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Ibid.* When reviewing an administrator's decision for abuse of

discretion, the district court must consider only the evidence that was before the plan administrator when the decision was made. *Alford*, 311 F.3d at 959; *McKenzie v. Gen. Tel. Co.*, 41 F.3d 1310, 1316 (9th Cir.1994).

■ Turning to the merits, this order holds that Jefferson Pilot abused its discretion in denying plaintiff's claim for disability benefits. An ERISA plan administrator abuses its discretion when it denies claims without explanation, construes plan provisions in a way that conflicts with the plain language of the plan, or relies on clearly erroneous findings of fact. *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1472–73 (9th Cir.1993). A decision that is not supported by substantial evidence in the record likewise constitutes an abuse of discretion. *McKenzie*, 41 F.3d at 1316–18.

In reaching this conclusion, this order finds *Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455 (9th Cir.1996), instructive. There, the court found that the plan administrator abused its discretion by misconstruing the plan and thus applying an erroneous standard for the determination of benefits. In the court's view, the administrator "abused its discretion by erroneously factoring 'accommodation' into the criteria for total disability for purposes of occupational disability benefits." *Id.* at 460. The plan language at issue stated that a participant was "totally disabled," if for a certain amount of time, he "is completely unable to perform each and every duty of his regular occupation." *Id.* at 457. The court of appeals objected to the administrator's construction of that term to include " 'work available for which she is qualified' with accommodations that could have been made." *Id.* at 460. That

---

**4.** Dr. Chinnakotla's signature, it should be pointed out, indicates agreement with the findings of the Independent Medical Exam; it

does not endorse Jefferson Pilot's interpretation of those findings (Maley Exh. 24).

interpretation, the court observed, effectively imposed new coverage requirements. *Id.* at 459–60.

■ Jefferson Pilot made a similar error when it ultimately denied plaintiff's claim in November 2002. The denial was premised on the findings of Dr. Discher and Dr. Chinnakotla's agreement with them. Dr. Discher concluded: "With respect to [the physical requirements for salesperson] listed by [plaintiff's] employer, I have interpreted that none of my recommended limitations or restrictions are impacting on job requirements, assuming that sitting and standing/walking alternation can be worked out in the details" (Maley Exh. 22). From this, Jefferson Pilot summarily concluded: "The above findings [of Dr. Discher] show that Mr. Mhadhbi would not be prohibited from performing the main duties of his regular occupation" (Maley Exh. 25).

There is a glaring gap between Dr. Discher's conclusions and Jefferson Pilot's. Dr. Discher's report expressly conditioned his conclusion that the recommended limitations and restrictions did not impact plaintiff's job requirements on the "assum[ption] that sitting and standing/walking alternation can be worked out in the details" (Maley Exh. 22). There is no evidence in the record that plaintiff's job allows for the satisfaction of this condition. Jefferson Pilot contends that the fact plaintiff's job description includes the term "with rest" solves this problem. This order disagrees. Dr. Discher's recommendations are not for occasional rest; they are far more substantial. Specifically, Dr. Discher recommends that plaintiff limit standing and sitting to thirty minutes at a time and states that thirty minutes of sitting rest should precede each walk, which itself should be limited to a one-hundred-foot distance (*ibid.*). Plaintiff's job description states that it requires him to be on his feet, either standing or walking, for

a total of five hours per eight-hour shift. It is by no means clear that it is possible, much less practical, to factor in the requisite sitting time into plaintiff's workday. Indeed, Dr. Discher's reports seem to confirm, rather than contradict, the other physicians' conclusions that plaintiff is totally disabled from his job because it requires him to spend long hours on his feet, which he is unable to do.

This order also notes that in addition to the express condition of working out the sitting and standing/walking alternation, Dr. Discher's conclusion implicitly requires another job modification: that plaintiff be relieved from his driving duties. Dr. Discher plainly stated: "I do not recommend that [plaintiff] operate any vehicle." Plaintiff's job description, however, indicates that his job as a car salesperson involves at least some driving (Maley Exh. 20). Neither Dr. Discher nor Jefferson Pilot reconciles this point with their conclusions regarding plaintiff's ability to complete his job requirements.

Jefferson Pilot plainly applied a definition of total disability that is inconsistent with the plan language of the plan when it premised denial of plaintiff's claim on Dr. Discher's report. The plan defines total disability as the insured's "inability, due to Sickness or Injury, to perform each of the main duties of his or her regular occupation" (Maley Exh. 3). This is not the same as inability to perform each of the main duties of his or her regular occupation as substantially modified to accommodate sickness or injury. *See Saffle,* 85 F.3d at 459.

This point is underscored by the plan's definition of "main duties" or "material and substantial duties," as those job duties that (*ibid.*):

(1) are normally required to perform the Insured Person's regular occupation; and

(2) cannot be reasonably modified or omitted.

It includes those main duties as performed in the usual or customary way in the general workforce; not as performed for a certain firm or at a certain work site.

Had Jefferson Pilot properly incorporated this definition into the definition of total disability, it could not have reasonably concluded as it did. Jefferson Pilot abused its discretion.

Having reached this conclusion, this order denies Jefferson Pilot's motion for summary judgment. Under the circumstances, there is no need for a trial; no issues of fact remain to be determined in this forum. *See Alford*, 311 F.3d at 959; *Bendixen*, 185 F.3d at 942. Rather, the matter must be remanded to the plan administrator for a reevaluation of plaintiff's claim in a manner consistent with this order. *See Saffle*, 85 F.3d at 461 (stating that "remand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination"). The primary task on remand will be a determination of whether the limitations recommended by Dr. Discher, as to driving and as to sitting, standing, and walking, render plaintiff unable to perform each of the main duties of his regular occupation. As provided by the plan, the relevant duties are those of a car salesperson in the general workforce that are normally required and cannot be reasonably modified or omitted.

## CONCLUSION

For the foregoing reasons, Jefferson Pilot's motion for summary judgment is **DE-NIED**. The matter is **REMANDED** to the plan administrator for reevaluation of plaintiff's claim. The parties' submissions in support and in opposition of defendant's motion shall be part of the administrative record upon remand.

**IT IS SO ORDERED.**