**Richard HINEMAN, Plaintiff–Appellant,**

v.

**LONG TERM DISABILITY PLAN OF E\*TRADE GROUP, INC., an Employee Welfare Benefit Plan established pursuant 29 USC 1001, Defendant–Appellee.**

No. 07–55079.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 2008.

Filed May 23, 2008.

Michael A. McKuin, Esq., Lake Arrowhead, CA, for Plaintiff–Appellant.

Adrienne C. Publicover, Esq., Wilson Elser Moskowitz Edelman & Dicker, LLP,

San Francisco, CA, for Defendant–Appellee.

Before: FISHER and PAEZ, Circuit Judges, and LORENZ, District Judge.*

### MEMORANDUM **

Former E*Trade employee Richard Hineman contends that AIG did not properly calculate his long-term disability ("LTD") benefits. The district court upheld AIG's benefits determination, finding that Hineman's date of disability was December 11, 2001, and that his "basic monthly earnings" as of that date were $3,750 (i.e., $45,000 on an annualized basis). We have jurisdiction over this ERISA-governed appeal under 28 U.S.C. § 1291, and we reverse and remand.

■ We do not defer to AIG's interpretation of the plan because it was not given discretion to construe the plan's terms. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1088 (9th Cir.1999) (en banc). We review de novo the district court's construction of plan language, in so doing resolving ambiguities in favor of the insured. *Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir.1995). We review the district court's findings of fact for clear error. *Saltarelli v. Bob Baker Group Med. Trust*, 35 F.3d 382, 384–85 (9th Cir.1994).

E*Trade hired Hineman as a Lead Software Engineer making $90,000 a year; he was an exempt, salaried employee. In December 1999, Hineman left work on a medical leave of absence because of a pre-existing heart condition. He returned to work in January 2001, but for various medical reasons was unable to resume his prior full-time schedule. He arranged to have his work schedule reduced to 20 hours per week. Between January 2001 and January 2002, Hineman never grossed more than $1,730 in any two-week pay period (i.e., $45,000 on an annualized basis). Hineman left work altogether in January 2002 because of a cognitive disability unrelated to his heart problems.

The starting point of the LTD benefits calculation is the insured's "basic monthly earnings," defined as "the insured's monthly rate of earnings from the employer in effect just prior to the date disability begins." AIG urges that "basic monthly earnings" be equated with the total pay received by the insured in the one-month period immediately before the insured becomes eligible to receive LTD benefits. AIG's argument relies on two distinct premises: first, that "monthly rate of earnings in effect" means actual take-home pay; and second, that "date disability begins" means "date *covered* disability begins"—that is, a disability not excludable as a pre-existing condition.

■ We reject the first of these premises because it renders the "rate of" language nugatory.[1] *See Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir.1997). The ordinary understanding of a "rate" is the "amount paid or charged for a good or service."

---

* The Honorable M. James Lorenz, District Judge for the Southern District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. We have no occasion to decide whether the interpretation of "date disability begins" implicit in AIG's second premise imposes a new requirement for coverage not expressly provided for by the plan, and so is invalid. *See Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 459–60 (9th Cir.1996).

Black's Law Dictionary (8th ed.2004). It is thus a step removed from actual take-home pay, because calculation of the latter requires that the rate be multiplied by the quantum of services performed during the period of measurement. On AIG's reading, the "basic monthly earnings" of a newly hired employee who became fully disabled partway through her first pay period would be her take-home earnings from that fractional pay period. This interpretation is unreasonable: the number of hours that hypothetical employee managed to work has no bearing on her *rate* of earnings.

E*Trade never formally lowered Hineman's rate of earnings when he returned to work in January 2001. Hineman was not re-hired as a part-time employee; instead, he retained "essentially the same occ[upation], just 20 hours instead of 40." In order to accommodate Hineman's "medical condition," E*Trade permitted him to work on that "restricted," half-time for half-pay basis. A September 2001 performance review acknowledged that Hineman "remain[ed] limited to half time work" because of "health concerns and Doctor's orders." When he "regain[ed] his health ... [and] return[ed] to his previous productivity levels," Hineman was to "[r]esume full-time work hours." E*Trade calculated his performance-based salary increase based on a "[c]urrent salary" of $90,000. We conclude that throughout 2001 and 2002, Hineman's "monthly rate of earnings" remained $7,500 (i.e., $90,000 on an annualized basis). Accordingly, we conclude that his "basic monthly earnings" also remained $7,500.

■ Furthermore, we conclude that the December 11, 2001 date of onset found by the district court was clearly erroneous because it equated the date of disability with the date the disability was first medically diagnosed. *See Lester v. Chater,* 81 F.3d 821, 832 n. 10 (9th Cir.1995). As far back as April 2001, Hineman complained about fatigue and cognitive problems to Dr. Haeusslein; Dr. Canick averred that Hineman's cognitive disability "preceded and commenced prior to [their] first meeting" on December 11, 2002; the December 28, 2001 MRI showed that Hineman's brain infarction was "old;" and Dr. Taylor identified Hineman's date of disability as February 7, 2001, and wrote that it was "clear that identified neurobehavioral impairments existed prior to 1/18/01."

We remand for the district court to award LTD benefits based on "basic monthly earnings" of $7,500. On remand, the district court should also determine the onset date of Hineman's cognitive disability, and award LTD benefits from that date.

**REVERSED and REMANDED.**