**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BARBARA SCOLES, | No. 13-36167 |
| Plaintiff–Appellant, | D.C. No. 3:12-cv-01665-MO |
| v. | |
| INTEL CORPORATION LONG TERM DISABILITY BENEFIT PLAN, an employee welfare benefit plan, | MEMORANDUM[*] |
| Defendant–Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, Chief Judge, Presiding

Argued and Submitted July 6, 2016
Portland, Oregon

Before: PREGERSON, BEA, and OWENS, Circuit Judges.

Barbara Scoles was a systems analyst at Intel Corporation ("Intel") until she

went on disability leave due to panic disorder, major depressive disorder, and

generalized anxiety disorder. She qualified for benefits under the Social Security

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

1

Disability Insurance program. Scoles also applied for benefits from Intel's long-term-disability plan ("Plan"), in which she was a participant. After an initial denial, benefits were granted through the "own occupation" period.[2] The Plan declined to continue Scoles's benefits into the "any occupation" period,[3] ostensibly because Scoles had failed to provide sufficient "Objective Medical Findings to support that [she was] not able to work 'any occupation' as stated in [the Plan]." After exhausting administrative remedies and a voluntary administrative appeal, Scoles brought suit against the Plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1). The district court granted summary judgment for the Plan. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand.

**1.** We agree with the district court that an unaltered abuse-of-discretion standard of review applies. Where, as here, an ERISA plan's administrator also funds the benefits, there is normally a financial conflict of interest that warrants enhanced skepticism of the benefits denial. *See Metro. Life Ins. Co. v. Glenn*, 554

---

[2] A participant in the Plan is eligible for benefits for the first 18 months of disability if he is unable to perform his "regular occupation or reasonably related occupation."

[3] After 18 months of disability, a participant in the Plan is eligible for continued benefits only if he is unable to perform "any occupation for which he . . . is or becomes reasonably qualified by training, education or experience."

U.S. 105, 112, 117 (2008); *Salomaa v. Honda Long Term Disability Plan*, 642

F.3d 666, 675 (9th Cir. 2011). However, the Plan's administrator, an Intel

committee, delegated the duty to decide claims to unconflicted third parties,

removing any inherent or structural conflict of interest. *See Day v. AT & T*

*Disability Income Plan*, 698 F.3d 1091, 1095–96 (9th Cir. 2012) (amended

opinion).[4] Moreover, Scoles has provided nothing other than bluster to support her

argument that Claim Appeal Fiduciary Services, Inc. ("CAFS"), which decided

Scoles's voluntary administrative appeal, had a conflict of interest because its

president "formerly made his living as an insurance defense attorney defending and

defeating ERISA benefits claims."

**2.** "Even without the special skepticism [to be applied] in cases of conflict of

interest, deference to the plan administrator's judgment does not mean that the plan

prevails. 'Deference' is not a 'talismanic word that can avoid the process of

judgment.'" *Salomaa*, 642 F.3d at 675 (brackets omitted) (quoting *Glenn*, 554 U.S.

at 119). Reed Group ("Reed"), the claims administrator that denied Scoles benefits

---

[4] We might come to a different conclusion if, for example, the financial arrangement between the Plan and the third-party claims administrators encouraged the claims administrators to deny benefits. *Cf. Glenn*, 554 U.S. at 114 ("[T]he employer's own conflict may extend to its selection of an insurance company to administer its plan."). However, we have found nothing in the record to support such a conclusion.

through the "any occupation" period and decided the first-level administrative appeal, and CAFS, which decided the voluntary administrative appeal, abused their discretion because, at each stage of the administrative process, they failed to engage in a "meaningful dialogue" with Scoles regarding the benefits denial. *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997); *see also* 29 C.F.R. § 2560.503-1.

In support of her claim for Plan benefits, Scoles gave Aetna Life Insurance Company ("Aetna"), which was then the Plan's claims administrator, notes from visits with Dr. Solem, her psychiatrist, and results of tests conducted by Dr. Balsamo, an independent psychiatrist.[5] Dr. Rater, a psychiatrist hired by Aetna to review Scoles's claim file, stated: "The restriction[s] imposed by Dr. Solem are no work for Ms. Scoles. Based on the review of the provided documentation, the restrictions . . . are appropriate." Accordingly, Aetna found sufficient "Objective Medical Findings" to support Scoles's claim for benefits through the "own occupation" period and overturned an earlier decision to deny such benefits.

---

[5] Specifically, Dr. Balsamo conducted the second version of the Minnesota Multiphasic Personality Inventory test and the Personality Assessment Inventory test. Dr. Balsamo explained that these tests are "objective from the standpoint that they are construed utilizing control groups and appropriate statistical procedures to establish norms that are both consistent and valid."

Nothing about Scoles's claim or Dr. Rater's review would have necessarily limited Scoles's benefits to the "own occupation" period—Dr. Rater agreed with Dr. Solem that Scoles should not work, period—but Aetna approved benefits only through the "own occupation" period and not into the "any occupation" period. Shortly thereafter, Reed took over as the Plan's claims administrator from Aetna. To determine whether Scoles's benefits would continue into the "any occupation" period, Reed "request[ed] updated Objective Medical Findings" and stated that it "would like to schedule [Scoles] for an Independent Medical Examination with a Psychiatrist." Scoles responded to this request and provided updated information from Dr. Solem. However, Reed did not schedule Scoles for an independent medical examination. Instead, it denied Scoles's claim.

In its denial-of-benefits letter, Reed recognized that Scoles had "documented diagnoses of Panic Disorder, Major Depressive Disorder and Generalized Anxiety Disorder," but found that "the medical documentation supporting these medical conditions does not meet the requirements of the [Plan]," ostensibly because "the Medical documents [submitted] do not contain any Objective Medical Findings,"

5

as required by the Plan.[6] The letter instructed Scoles that, "to be considered for benefits under [the Plan], you must submit Objective Medical Findings to support that you are not able to work 'any occupation.'" It also stated that Reed disagreed with Aetna's earlier decision to grant Scoles benefits through the "own occupation" period.

As part of its benefits denial, Reed was supposed to tell Scoles, "in a manner calculated to be understood by the claimant," "[t]he specific reason or reasons for the adverse determination" and "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of

---

[6] According to the Plan: "'Objective Medical Findings' means a measurable, independently-observable abnormality which is evidenced by one or more standard medical diagnostic procedures including laboratory tests, physical examination findings, X-rays, MRI's, EEG's, ECG's, 'Catscans' or similar tests that support the present of a disability or indicate a functional limitation. Not all tests or test results meet the criteria of Objective Medical Findings. For example, tests that depend on Participant self-reports, such as trigger point/tender point tests, are not considered objective and do not establish eligibility for benefits under this Plan. Tests whose results vary depending on the Participant's expenditure of effort, such as grip strength tests and cognitive tests, likewise are not considered objective, but may be taken into consideration as corroborative evidence of disability . . . . Objective Medical Findings do not include physicians' opinions or other third party opinions based on the acceptance of subjective complaints (e.g. headache, fatigue, pain, nausea), age, transportation, local labor market and other non-market factors. To be considered an abnormality, the test result must be clearly recognizable as out of the range of normal for a healthy population. The significance of the abnormality must be understood and accepted by the medical community as diagnostic of the specific disabling condition asserted by the Participant."

why such material or information is necessary." 29 C.F.R. § 2560.503-1(g)(1). We have interpreted this regulation to require a "meaningful dialogue between ERISA plan administrators and their beneficiaries." *Booton*, 110 F.3d at 1463. Far from engaging in a "meaningful dialogue," Reed's denial-of-benefits letter is perfunctory. The Plan's definition of "Objective Medical Findings" addresses the kinds of evidence necessary to establish a claim for benefits due to a physical disability—but it sheds little light on how to prove disability account a mental-health condition. *See supra* note 6. Reed's decision relied on the lack of sufficient "Objective Medical Findings" in Scoles's claim file, but Reed's letter gave no further guidance on the meaning of "Objective Medical Findings" in the mental-health context.

More importantly, Scoles had previously submitted evidence that Aetna had found to satisfy the Plan's requirements. Although Reed was not bound by Aetna's decision or interpretation of the Plan's terms, it had to explain why it disagreed with Aetna, its different interpretation of the term "Objective Medical Findings," and why Scoles's evidence was—under Reed's interpretation of the Plan's terms—insufficient to support her claim. *See Salomaa*, 642 F.3d at 679 ("[T]he plan administrator denied the claim largely on account of absence of objective medical evidence, yet failed to tell Salomaa what medical evidence it wanted.");

7

*Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 870 (9th Cir. 2008) ("MetLife's termination letter to Saffon is equally uninformative. It notes merely that '[t]he medical information provided no longer provides evidence of disability that would prevent you from performing your job or occupation,' but does not explain why that is the case, and certainly does not engage Dr. Kudrow's contrary assertion. The termination letter does suggest Saffon can appeal by providing 'objective medical information to support [her] inability to perform the duties of [her] occupation,' but does not explain why the information Saffon has already provided is insufficient for that purpose."). Similarly, Reed should have, but did not, explain why Scoles did not qualify for benefits under the Plan even though she had qualified for Social Security Disability Insurance benefits. *See Salomaa*, 642 F.3d at 679 ("Evidence of a Social Security award of disability benefits is of sufficient significance that failure to address it offers support that the plan administrator's denial was arbitrary, an abuse of discretion. Weighty evidence may ultimately be unpersuasive, but it cannot be ignored." (footnote omitted)).

Reed's letter affirming the denial of benefits is even more opaque and uninformative. Reed was required to give Scoles's claim a "full and fair review" and to notify Scoles, "in a manner calculated to be understood by the claimant," of "[t]he specific reason or reasons for the adverse determination." 29 C.F.R.

8

§ 2560.503-1(h), (j). Instead, Reed's letter recited definitions from the Plan, listed documents in the administrative record, and copied verbatim a psychiatrist's review of the documents in the record. That review left unclear the precise reasons for denial, the standard by which Reed was judging "Objective Medical Findings," and the threshold to qualify for Plan benefits for participants with mental-health conditions.

CAFS's final denial letter was more informative, insofar as it (1) explained why Scoles might have qualified for Social Security Disability Insurance benefits but not Plan benefits and (2) hinted at the kinds of evidence necessary to establish eligibility for Plan benefits, such as "generally accepted testing results," "trials of various medication, changes in the frequency of treatment, changes in the treatment approach, or reports of in-patient treatment." But CAFS did not suggest what "tests" would show that Scoles is disabled from working—it noted that Dr. Balsamo's report was "instructive," but did not state whether Scoles needed only to submit a similar, updated report. In any event, any clarity provided by CAFS came too late, as CAFS was the final administrative reviewer, and Scoles lacked further opportunities to submit new medical evidence. *See Saffon*, 522 F.3d at 871 ("The second paragraph does communicate some useful information. In responding to Dr. Kudrow's various reports, MetLife notes that '[i]t is not clear what Dr. Kudrow

used as a basis for [his diagnosis] . . . as we've not been furnished with a Functional Capacity Evaluation that would objectively measure and document your current level of functional ability.' This appears to be not only MetLife's first (and only) response to Dr. Kudrow's evaluation, but also the first reference in the record to the absence of a Functional Capacity Evaluation . . . . Since this was MetLife's final denial of Saffon's claim, this information came too late to do Saffon any good.").

In sum, we hold that Reed and CAFS abused their discretion because they failed to provide Scoles with a meaningful opportunity to provide evidence that would satisfy their as-yet-unexplained interpretation of the term "Objective Medical Findings." *Cf. Salomaa*, 642 F.3d at 680 ("An administrator does not do its duty under [ERISA] by saying merely 'we are not persuaded' or 'your evidence is insufficient.' Nor does it do its duty by elaborating upon its negative answer with meaningless medical mumbo jumbo."). We thus reverse the district court's grant of summary judgment in favor of the Plan.

**3.** Because it is unclear how the term "Objective Medical Findings" applies in the mental-health context and whether Scoles's evidence meets the Plan's definition of that term, we remand this case to the district court, which shall, in the first instance, determine whether to take new evidence or remand this case to the

Plan's administrator for a new decision on Scoles's claim. *See Saffon*, 522 F.3d at 873–74 & n.6 (remanding to the district court to take new evidence "where procedural irregularities have prevented full development of the administrative record"); *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460–61 (9th Cir. 1996) (ordering a remand to the ERISA plan's administrator to apply the correct terms of the long-term-disability plan in the first instance).

**REVERSED and REMANDED with instructions.**[7]

---

[7] The Plan's motion to strike, Dkt. No. 37, is **DENIED**. The Plan's motion for an extension of time to reply to Scoles's response to the motion to strike, Dkt. No. 42, is **GRANTED**.