NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FEB 6 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| K. K.; I. B.,  Plaintiffs-Appellants,  v.  PREMERA BLUE CROSS; COLUMBIA BANKING SYSTEM, INC. BENEFITS PLAN,  Defendants-Appellees. | No. 23-35480  D.C. No. 2:21-cv-01611-JCC  MEMORANDUM* |

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, Senior District Judge, Presiding

Argued and Submitted October 25, 2024
San Francisco, California

Before:  S.R. THOMAS, OWENS, and COLLINS, Circuit Judges.

Plaintiffs-Appellants K.K. and I.B. (K.K.'s daughter) (collectively,

"Plaintiffs") brought suit against Defendants-Appellees Premera Blue Cross

("Premera") and the Columbia Banking System, Inc. ("Columbia") Benefits Plan

("the Plan") seeking recovery of benefits.  Premera, the administrator of the Plan,

which is regulated by the Employee Retirement Income Security Act of 1974

("ERISA"), had denied I.B. benefits for her stay at the Eva Carlston Academy

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

psychiatric residential treatment center after concluding that her stay was not medically necessary within the meaning of the Plan. The district court granted summary judgment to Defendants-Appellees, and Plaintiffs appealed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. "We review de novo a district court's choice and application of the standard of review to decisions by fiduciaries in ERISA cases." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006) (en banc). "We review for clear error the underlying findings of fact." *Id*. The district court correctly determined, and Plaintiffs do not challenge, that Premera's decision is reviewed for abuse of discretion. "[I]f the plan . . . confer[s] discretionary authority as a matter of contractual agreement, then the standard of review [is] abuse of discretion." *Id*. at 963. Because the Plan and the administrative services contract between Columbia and Premera expressly conferred discretion to Columbia and delegated it to Premera, the standard of review is abuse of discretion.

2. Premera did not abuse its discretion in interpreting the Plan to define medical necessity by reference to the InterQual criteria.

"An ERISA plan administrator abuses its discretion if it construes provisions of the plan in a way that 'conflicts with the plain language of the plan.'" *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 458 (9th Cir. 1996) (citation omitted). "Our inquiry is not into whose

2

interpretation of the plan documents [i.e., the administrator's or the district court's] is most persuasive, but whether the plan administrator's interpretation is unreasonable." *Id*. (alteration in original) (citation omitted).

The Plan defines a treatment to be medically necessary only if it is, among other things, "[i]n accordance with generally accepted standards of medical practice." It then provides that "'generally accepted standards of medical practice' means standards that are based on credible scientific evidence published in peer reviewed medical literature generally recognized by the relevant medical community, physician specialty society recommendations and the views of physicians practicing in relevant clinical areas and any other relevant factors." The Plan further states that Premera has "adopted guidelines and medical policies that outline clinical criteria used to make medical necessity determinations."

In light of this language, Premera's use of the InterQual criteria to determine the medical necessity of I.B.'s treatment was not unreasonable. The InterQual criteria "are reviewed and validated by a national panel of clinicians and medical experts, and represent a synthesis of evidence-based standards of care, current practices, and consensus from licensed specialists and/or primary care physicians." *Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1114–15 (9th Cir. 2020) (internal quotation marks omitted). They "were developed by independent companies with no financial interest in admitting more

3

inpatients than outpatients"; "were written by a panel of 1,100 doctors and reference 16,000 medical sources"; and were used by "[a]bout 3,700 hospitals." *Norfolk Cnty. Ret. Sys. v. Community Health Sys., Inc.*, 877 F.3d 687, 690 (6th Cir. 2017). Given these features, Premera's adoption of the InterQual criteria as reflecting "generally accepted standards of medical practice" was not unreasonable.

3. Premera did not abuse its discretion in denying benefits on the ground that I.B. did not meet the InterQual criteria for admission to Eva Carlston Academy.

Under the InterQual criteria, admission to a psychiatric residential treatment center is indicated only if the patient has (1) a severe functional impairment, defined as being "[u]nable or unwilling to follow instructions or negotiate needs" or "[u]nable to maintain behavioral control for more than 48 hours"; (2) an inadequate support system; and (3) certain persistent or repetitive symptoms over at least six months rendering the patient "[u]nable to be managed safely within the community."

Premera did not abuse its discretion in concluding that I.B. did not meet these criteria. I.B. was admitted to Eva Carlston Academy shortly after completing a two-month stay at Pacific Quest, a different treatment facility. It was not unreasonable for Premera to conclude from the evidence that I.B.'s condition

4

improved enough during her time at Pacific Quest that she no longer met the InterQual criteria for residential treatment when she entered Eva Carlston Academy. The most contemporaneous assessments of I.B.'s condition were a psychological evaluation by Jason Adams, Ph.D., a few weeks before I.B. was discharged from Pacific Quest and a psychiatric evaluation by Dr. Kirk Simon within two weeks of I.B.'s admission to Eva Carlston Academy. Their diagnoses and narrative observations support Premera's conclusion that I.B.'s mental health conditions did not impose a severe functional impairment and could be managed safely within the community. I.B. had not had suicidal ideation since she started at Pacific Quest, she reported "dramatic improvement in her depression since going to Pacific Quest," and her "most significant symptom" by the time she was admitted to Eva Carlston Academy was anxiety. Although it is not clear how stable these improvements in I.B.'s condition would have been without further residential treatment, we cannot say that Premera abused its discretion in concluding that I.B. did not meet the InterQual criteria for residential treatment at the time she was admitted to Eva Carlston Academy.

Plaintiffs make two arguments to the contrary, but neither changes the outcome of this appeal. First, Plaintiffs argue that Premera failed to specifically address letters of medical necessity from I.B.'s treating providers. But "courts have no warrant to require administrators automatically to accord special weight to

5

the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Because I.B.'s treating providers wrote their letters of medical necessity one year after I.B.'s admission to Eva Carlston Academy and did not base them on firsthand evaluations of I.B. around the time of her admission, Premera did not abuse its discretion by rejecting their conclusions and instead reaching a contrary conclusion supported by the more contemporaneous, firsthand assessments of Dr. Adams and Dr. Simon.

Second, Plaintiffs argue that, in violation of § 503 of ERISA, *see* 29 U.S.C. § 1133, Premera failed to engage in a meaningful dialogue and instead only provided vague reasons for denying their claim. *See also* 29 C.F.R. § 2560.503-1(g) (describing procedural requirements concerning manner and content of an "adverse benefit determination"). But even if we assume *arguendo* that such a procedural irregularity occurred, it does not change the outcome of this appeal.

"When an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well, we review de novo the administrator's decision to deny benefits." *Abatie*, 458 F.3d at 971. Otherwise, the procedural irregularities are simply additional factors to be weighed in deciding whether the

6

administrator abused its discretion, and a court may, if warranted, order that additional evidence be taken to cure any defects in the administrative proceedings resulting from the procedural irregularities. *See id*. at 972–73.

The procedural irregularity alleged here was not sufficiently "wholesale and flagrant" to merit de novo review of Premera's decision, nor does it change the result of our review for abuse of discretion. Premera consistently denied Plaintiffs' claim on the ground that I.B.'s symptoms were not severe enough to meet the InterQual criteria for residential treatment at the time of her admission to Eva Carlston Academy. Even if we assume that Premera's explanations were vague in some respects, such irregularity at most affected Plaintiffs' ability to submit responsive evidence to perfect their claim. But Plaintiffs have given no reason to believe that, if the record were reopened, they could introduce favorable evidence that would call for a different result. The alleged irregularity therefore did not amount to an abuse of discretion.

**AFFIRMED.**